*154
 
 Ruffin, C. J.
 

 Although the preponderance of proof seems to sustain the statement in the answer, that the slave Chañe was put by James Thompson into the possession of his son-in-law, Noah Peacock,, in the year 1806, which, as the law then stood, amounted to a gift; yet, as there is some evidence, that the tranaction was in December, 1807, the Court does not deem it proper to determine the cause on that point, as there are others, on which' the decision, as to that slave and issue, may be safely made against the plaintiffs, without incurring any risk of mistake either as to the facts or the law.
 

 The Court holds that no title was derived by the defendant, Elizabeth Pridgen, or her late husband and intestate under the will of her father, James Thompson; because, admitting that Chañe was lent to Noah Peacock or put into his possession after the act of 1806 was in force, yet the title of Thompson was gone before his death by the adverse possession of Peacock’s executor and of the defendant, Elizabeth, under the bequest in his will. The facts, in relation to that point, are, that Peacock being in possession of the slave and her children, then born, bequeathed them to his widow for life, with a limitation over to all his children, and he died in 1824, and his executor took his estate into possession, and assented to the legacy to the widow and delivered the slaves to her, and she held them on that title until her subsequent intermarriage with Hardy Prid-gen, in 1838. Soon after that marriage, Pridgen surrendered to Peacock’s children, as the remaindermen, several of the children of Chañe, but kept her and two of her children, giving to the executor an obligation not to remove them, but to return them at his death. Soon afterwards James Thompson died, leaving a will dated in 1839, in which he said that he had “heretofore lent Elizabeth Peacock a negro ivoman Chañe, and now I give her and her
 
 *155
 
 children to the said Elizabeth.” The case of
 
 Powell v. Powell,
 
 1 Dev. & Bat. Eq. 379, and others since, show conclusively, that the possession thus taken under the will of Peacock is to be deemed a new posssession under a claim of title, and adverse to the original bailor : and, as. it was continued from 1824 to 1838 without interruption or claim by the father, his title was barred.
 

 Upon the marriage of Pridgen and Mrs. Peacock he became entitled to her life estate in these slaves, though the parties seem to have thought that he would hold them during'his life only, and that they would survive to the wife. The defendant would then be bound to account for the: slaves, as the property of her late husband for the period of her life, if the husband had not himself parted from that interest. But he did so effectually, in the opinion of the Court. In 1846 he made a deed for them to two of the re-maindermen; A. and Z. Peacock, which purported to convey all his interest to them. That instrument is impeached-in the bill upon the ground, that Hardy Pridgen was non compos at the time, or, at all events, that it was obtained from him in his old age and while in a state of bodily and; mental infirmity without consideration and by the importunities of his wife, acting in collusion with her two sons to take advantage of his weakness. But all those imputations appear to be wholly .unfounded. The fact is, that the intestate was, himself, the mover in the matter, and was induced to do so because the negroes were increasing so rapidly — being then seven — as to render them an expense and burthen-.to him and he urged the remaindermen, that they ought not to compel him to raise a family of negroes for them, but relieve him of them by taking them and having his bond to the executor cancelled. In those .opinions the evidence shows, that the intestate was correct, and that he was exercising a sound judgment in getting rid of the fam
 
 *156
 
 ily of negroes. Therefore, there seems to be no ground for impeaching the deed, but it must be declared to have effectually passed all his right in the slaves.
 

 The bill impeaches the purchases of the defendant of some trifling articles at her sale as administratrix, upon the ground that the prices were inadequate. The bill was filed very soon after the sale, and the answer, averring that the prices were full and adequate, and that the plaintiffs ran the biddings on her, submits to a resale at the election of the plaintiffs: but the plaintiffs made no motion on the answer. The Court therefore, concludes,
 
 that they are
 
 content, that there should be no resale : and consequently, the defendant is to stand charged with the prices which she bid.
 

 The bill also impeaches the year's allowance to the widow, upon the grounds, that it was exorbitant, and obtained by false suggestions and under practices on the commissioners and the County Court. If such reasons could lay the foundation for relief against the allowance in this Court, yet it cannot be given in this case, inasmuch as the answer denies the truth of those allegations, and they are not established by the evidence.
 

 There will of course be the usual orders for an account and for distribution of
 
 the other,
 
 slaves. But as the main purpose of the bill, when filed, was to assert a claim to the slave Chañe and her issue, in which it fails, and as the bill wantonly imputes to the defendant gross fraud and collusion with her sons to set up an unfounded claim to slaves belonging to her intestate, and in that respect was entirely unfounded, it is of course that the plaintiffs must pay full costs in the cause up to this time.
 

 Per Curiam. 'Decree accordingly.